WALTON v DEPARTMENT OF CORRECTIONS

Docket No. 173872. Submitted May 18, 1995, at Marquette. Decided
August 1, 1995, at 9:05 A.M. Leave to appeal sought.

Robert Walton, a Canadian citizen serving sentences of life
imprisonment in a Michigan prison for convictions of first-
degree murder, brought an action for habeas corpus in the
Chippewa Circuit Court after the Department of Corrections
refused to provide him with an application form for his trans-
fer to a Canadian prison pursuant to a treaty between the
United States and Canada on the execution of penal sentences.
The court, Nicholas J. Lambros, J., granted summary disposi-
tion for the department, ruling that the department could deny
the requested transfer pursuant to a departmental policy that
prohibits the transfer of a foreign national to that person's
home country if the sentence being served is one of life for first-
degree murder. Walton appealed.

The Court of Appeals held:

The department's policy of categorically denying transfers to
prisoners who fail to qualify under the departmental policy
does not violate the treaty. One provision of the treaty states
that if the offender was sentenced by the courts pursuant to the
laws of a state or province of one of the parties, the approval of
the authorities of that state or province, as well as that of the
federal authority, is required. Another provision of the treaty
states that in deciding upon the transfer of an offender, the
authority of each party must bear in mind all factors bearing
upon the probability that transfer will be in the best interests
of the offender. The latter provision applies to the United
States and Canada only, and imposes no restriction on Michi-
gan's discretion over the approval of transfers of those con-
victed under Michigan law.

Affirmed.

PRISONS AND PRISONERS — TRANSFER OF FOREIGN NATIONALS TO HOME
COUNTRIES — FIRST-DEGREE MURDER.

The policy under which the Department of Corrections denies

REFERENCES

Am Jur 2d, Penal and Correctional Institutions § 158.
See ALR Index under Canada; Prisons and Prisoners; Transfers.

approval of a transfer of a foreign inmate from a Michigan prison to a prison in the foreigner's home country if the foreigner is serving a sentence of life imprisonment for a conviction of first-degree murder does not violate the Treaty Between the United States and Canada on the Execution of Penal Sentences (OP-BCF-34.03; MCL 750.316; MSA 28.548; 30 UST 6265, TIAS No 9552).

*Gray, Judson, Ford & Seaman, P.C.* (by *Peter H. Shumar*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *George N. Stevenson,* Assistant Attorney General, for the defendant.

Before: GRIFFIN, P.J., and SMOLENSKI and R. L. ZIOLKOWSKI,* JJ.

GRIFFIN, P.J. Plaintiff appeals as of right an order of the circuit court granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(8) and dismissing plaintiff's habeas corpus complaint. We affirm.

Plaintiff, who is a Canadian citizen, is currently incarcerated at the Kinross Correctional Facility in Kinross, Michigan. In April 1973, plaintiff was sentenced to life imprisonment for conviction of two counts of first-degree murder.

In May 1993, plaintiff requested an application from the Department of Corrections (DOC) for a transfer to serve the remainder of his sentence in Canada. Plaintiff contends that under the Treaty Between the United States and Canada on the Execution of Penal Sentences, July 19, 1978, 30 UST 6263-6272, TIAS No 9552, he is entitled to such a transfer.

In denying plaintiff's request for a transfer application, defendant informed plaintiff that a pol-

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

icy promulgated by the DOC precludes individuals serving life sentences for first-degree murder from being considered for foreign transfer. Plaintiff subsequently brought an action for habeas corpus. In his complainant, plaintiff alleged that defendant's policy violates the United States/Canadian treaty on execution of penal sentences.

On March 7, 1994, a hearing was held on defendant's motion for summary disposition brought pursuant to MCR 2.116(C)(8). At the hearing, plaintiff argued that he was entitled to an application for transfer because the treaty specifically included persons serving life sentences as eligible for transfer. In response, defendant noted that plaintiff was not sentenced under federal law but "pursuant to the laws of a state or province of one of the parties." Defendant claimed unqualified discretion to deny plaintiff's transfer request in accordance with the following provisions of Article III, § 5, of the treaty:

> If the offender was sentenced by the courts pursuant to the laws of a state or province of one of the Parties, the approval of the authorities of that state or province, as well as that of the federal authority, shall be required. The federal authority of the Receiving State shall be responsible for the custody of the transferred Offender.

The trial court agreed with defendant's argument and dismissed plaintiff's petition.

At issue in this case is the propriety of the DOC policy OP-BCF-34.03 regarding the transfer of foreign nationals to their home countries. Under the DOC policy, a prisoner must meet the following criteria in order to be eligible for such a transfer:

> 1. The prisoner must be a citizen of the receiving country.

2. The prisoner must be convicted and sentenced.

3. The prisoner must not be serving a mandatory Life sentence for first degree murder [MCL 750.316; MSA 28.548] or violation of drug law [MCL 333.7401(2)(a) (i); MSA 14.15(7401)(2)(a)(i)].

4. The prisoner must not be committed solely for a military or immigration offense.

5. The prisoner must have at least six months of the instant sentence remaining to be served at the time of request for transfer.

6. The prisoner must have no pending proceeding by way of appeal or collateral attack upon the instant conviction or sentence.

7. The prisoner must be convicted of a crime which is generally punishable as a crime under the laws of the other country.

8. Should the prisoner have an outstanding detainer, and detaining authorities refuse to agree to the prisoner's transfer, the prisoner cannot be transferred.

9. The prisoner, the transferring country, and the receiving country must all consent to the prisoner's transfer. [OP-BCF-34.03.]

Plaintiff contends that the above DOC policy conflicts with the following provisions of Article III, § 6, of the treaty, which reads:

In deciding upon the transfer of an Offender, the authority of each *Party* shall bear in mind all factors bearing upon the probability that transfer will be in the best interests of the Offender. [Emphasis added.]

Plaintiff argues that pursuant to the treaty, defendant is required to consider a prisoner's best interests in exercising its discretion in deciding upon a transfer request. Plaintiff claims that defendant's policy of categorically denying transfers to prisoners who fail to qualify under DOC policy OP-BCF-34.03 violates the treaty.

This argument was directly decided against plaintiff by the Ninth Circuit Court of Appeals in *Hogan v Koenig,* 920 F2d 6, 8 (CA 9, 1990), in which the court held that the requirements of Article III, § 6, are applicable only to the original parties to the treaty and their authorities:

> Appellant argues that in declining consent to Hogan's transfer, the Board had the discretion to consider the gravity of Hogan's offense and the amount of time remaining to be served. Article III, Section 6 of the Treaty provides, "in deciding upon the transfer of an Offender, the authority of each Party shall bear in mind all factors bearing upon the probability that transfer will be in the best interests of the Offender." 30 UST at 6268. Appellee argues this clause requires the Board to consider only a prisoner's best interests in granting or withholding consent to a transfer. Appellee contends that by refusing to give its consent to Hogan's transfer, the board considered only California's interests, not the best interests of Hogan, and therefore violated the Treaty.
>
> We need not decide this question. California is neither a party to the Treaty nor the authority of a party to the Treaty.[1] Therefore, California is not bound by the language in Article III, Section 6 of the Treaty.
>
> California has decided to cause Hogan to serve his sentence where he committed his crime, and not in his native land. California has the power to make such a decision, and the treaty expresses no limitations on the basis on which California may make that decision. As California has validly denied consent to Hogan's transfer, we need not consider Hogan's remaining argument that he is receiving a life sentence and, thus, would have been eligible for transfer if California had consented to the transfer.

---

[1] The parties to the treaty are the United States and Canada. *See, e.g.,* Preamble, 30 UST at 6265 ("The Government of the United States of America and the Government of Canada . . .

[h]ave agreed as follows:"); Art VIII, § 2, 30 UST at 6272 ("The treaty shall continue in force until thirty days from the date upon which *either* Party gives written notice to the *other* Party of its intention to terminate the Treaty"). The authority of a party is that entity designated by a party "to perform the functions provided in th[e] Treaty," Art III, § 1, 30 UST at 6267. As Congress has designated only the Attorney General of the United States to perform the functions provided in the Treaty, 18 USC § 4102, he is the only authority of the United States within the meaning of the Treaty. *Cf.* Art III, § 5, 30 UST at 6268 ("If the offender was sentenced by the courts pursuant to the laws of a state or province of one of the Parties, *the approval of the authorities of that state or province,* as well as that of the federal authority, shall be required.")

---

In the present case, we follow the reasoning of the Ninth Circuit Court of Appeals in *Hogan* and hold that the treaty does not require Michigan to take into account the best interests of the prisoner in deciding upon a transfer request. In our view, Article III, § 6 of the treaty does not impose any restrictions on Michigan's discretion. Instead, we conclude that the best interests requirement of this provision is applicable only to the original parties to the treaty and their authorities. Given our narrow construction of this portion of the treaty, plaintiff's other argument that an application is necessary to permit defendant to exercise its discretion must also fail. Plaintiff's request for a transfer application is made moot by defendant's decision to deny plaintiff a transfer.

For these reasons, we conclude that the trial court properly granted defendant's motion for summary disposition.

Affirmed.